**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

THOMAS REBIS, II,         )  NO. EDCV 11-00635 SS
                          )
          Plaintiff,   )
                          )
         v.           )
                          )  **MEMORANDUM DECISION AND ORDER**
MICHAEL J. ASTRUE,      )
Commissioner of the Social    )
Security Administration,     )
                          )
         Defendant.   )
_____)

**I.**

**INTRODUCTION**

Thomas Rebis, II ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying his applications for Social Security Income benefits ("SSI"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the Agency's decision is AFFIRMED.

\\

**II.**

**PROCEDURAL HISTORY**

Plaintiff applied for SSI on December 8, 2008 alleging a disability onset date of September 1, 2007. (Administrative Record ("AR") 116-122). The Agency denied Plaintiff's initial application for SSI on March 4, 2009, (AR 53-57), and denied reconsideration on July 9, 2010. (AR 61-65). Plaintiff then requested a hearing, (AR 67-69), which was held on May 26, 2010 before an Administrative Law Judge ("ALJ"), (AR 17-50), where Plaintiff appeared with counsel and testified. (AR 20-37). Plaintiff's step-father Bill Martin and a vocational expert also testified at this hearing. (AR 37-49). On July 9, 2010, the ALJ denied benefits. (AR 9-16). The Appeals Council denied Plaintiff's request for review of the ALJ's decision on March 14, 2011, (AR 1-4), making the ALJ's decision the final decision of the Agency. Plaintiff then filed the instant action.

**III.**

**FACTUAL BACKGROUND**

Plaintiff was 19 years old at the time of his alleged disability onset date. (AR 116). He can speak, understand, and write in English. (AR 127). Plaintiff has held one job for a short period of time as a laborer. (AR 129). Plaintiff's claimed disability stems from "psychiatric, panic attacks, depression, anger outbursts [,] high blood pressure" and headaches. (AR 128).

\\

2

**A.    Plantiff's Medical History**[1]

The majority of Plaintiff's medical records regarding his mental health derive from visits to Charlee Family Care between October 2007 and May 2010.  (AR 255-66, 326-39).  On October 25, 2007, Plaintiff presented with problems of depression and anger.  (AR 264).  He stated that he was raised in an abusive household and was sexually abused.  (Id.).  Plaintiff was diagnosed with major depression that was recurrent and moderate, post-traumatic stress disorder ("PTSD") and high blood pressure.  (AR 264).  It was also noted that Plaintiff "smoked pot, quit recently, would do it again."  (AR 265).

On May 2008, Plaintiff's dysfunction rating was mild/moderate but his anger outbursts were reduced from daily to once a week.  (AR 262).  His symptoms of depression including lack of sleep, irritability, and anxiety were also reduced.  (Id.).  Between May and September 2008, Plaintiff was reported as "doing good," "sleep and appetite okay," "depression okay," and "stable on meds."  (AR 333-34).  In October 2008, Plaintiff was still "doing good," but had increased depression and anxiety attacks.  (AR 333).  In March 2009, Plaintiff reported that he recently had a seizure and was smoking marijuana but otherwise he was doing okay, depression was fair and his anxiety fluctuated.  (AR 332).  In May 2009, Plaintiff reported that he smoked pot and takes "6 hits/day," his depression was okay and had no anger outbursts.  (Id.).

---

[1]    Plaintiff does not challenge the ALJ's findings regarding his alleged exertional limitations.  Accordingly, the summary of Plaintiff's medical history focuses on his mental health issues.

3

1 | Also, no seizures were noted.  (Id.).  Between June and September 2009,
2 | Plaintiff was doing okay but he had increased depression.  (AR 330).
3 | In October 2009, Plaintiff reported that he is "unable to work," "gets
4 | depressed," "can't hold a job," but his depression is better with his
5 | medication.  (AR 329).  On May 15, 2010, Plaintiff was less depressed,
6 | goes for walks with the dog, looks and feels better.  (AR 326).  It was
7 | also noted that Paxil was working.  (Id.).

8 |
9 | **B.    State Agency Psychiatrists' Opinions**

10 |
11 |     On February 21, 2009, after reviewing Plaintiff's mental health
12 | history, Dr. Preston Davis, completed a Psychiatric Review Technique and
13 | Mental Residual Functional Capacity Assessment.  (AR 183-97).  Dr. Davis
14 | determined that Plaintiff suffered from anxiety evidenced by "recurrent
15 | and intrusive recollections of a traumatic experience, which are a
16 | source of marked distress."  (AR 187).

17 |
18 |     With respect to Plaintiff's "B" Criteria functional limitations,
19 | Dr. Davis found that Plaintiff had mild limitations in activities of
20 | daily living and in maintaining concentration, persistence, or pace, and
21 | moderate limitations in maintaining social functioning.  (AR 191).  He
22 | noted that there was insufficient evidence to determine whether
23 | Plaintiff experienced repeated episodes of decompensation.  (Id.).

24 |
25 |     Dr. Davis also opined on Plaintiff's mental RFC.  (AR 195-97).  He
26 | found that Plaintiff was moderately limited in the ability to work in
27 | coordination with proximity to others without being distracted by them,
28 |

the ability to interact appropriately with the general public, and the ability to respond appropriately to changes in the work setting. (<u>Id.</u>). Plaintiff was not significantly limited in any other mental activity. (<u>See</u> <u>id.</u>). Finally, Dr. Davis assessed Plaintiff's mental RFC as being able to understand, remember and carry-out simple and more complex work instructions. (AR 197). He can sustain his concentration, pace and his persistence with his work tasks for two hour blocks of time with customary breaks over the course of a regular work-day week. (<u>Id.</u>). Plaintiff would have difficulty coping with the stress of having to consistently interact with the general public or with co-workers. (<u>Id.</u>). He can perform his work tasks with little general public/co-worker contact. (<u>Id.</u>). Plaintiff can adapt to a work setting that is simple and routine. (<u>Id.</u>).

On May 14, 2009, after reviewing Plaintiff's case, state agency psychiatrist Dr. G. Johnson concurred with Dr. Davis' mental RFC of Plaintiff. (AR 242).

**C.   <u>Plaintiff's Testimony</u>**

At the hearing, Plaintiff testified that he has never had a driver's license, and his father drives him. (AR 20-21). Plaintiff testified that he smokes almost a pack of cigarettes a day. (AR 21). He does not drink alcohol, but he does smoke marijuana which he asserted that he quit "about a week and a half" before the hearing. (<u>Id.</u>). He testified that he quit because it makes him tired and his psychiatrist thought it was a good idea if he quit. (<u>Id.</u>). Prior to

quitting, Plaintiff testified that he smoked marijuana "twice a week or so." (Id.).

Plaintiff testified that he had a seizure in February 2009, and was diagnosed with epilepsy. (AR 23). Plaintiff reported that he last had a seizure when he was in the fourth grade. (Id.). He takes Tegretol for the seizures, and it controls his symptoms. (Id.).

Plaintiff began twelfth grade, did not finish high school. Plaintiff stated that he was molested from when he was nine and one and half to eighteen years old. (AR 24).

Plaintiff worked at a Lamps Plus for only two days because he gets nervous when he is around people or out in public. (Id.). He testified that he starts "shaking really bad and it kind of makes [him] sick." (Id.).

Plaintiff sees his psychiatrist once a month and his therapist once a week at Charlee Hospital. (AR 25-26, 32). Plaintiff testified that he began counseling at age 18. (AR 29-30). He noted that he has seen improvement since the counseling started but when he gets back in his truck to go home, "it just sets back in." (AR 31).

He takes his dog for a walk. (AR 26). He volunteers at his sister's elementary school for about four hours a day. (Id.).

6

1     Plaintiff reports that he is unable to work because is unable to
2   engage with people and gets "too depressed." (Id.).  Plaintiff traces
3   his depression to the molestation. (AR 27).  He also gets anxiety and
4   panic attacks that he believes began when he was 18 years old. (Id.).
5   He reports that he gets panic attacks when he gets depressed which is
6   "once every two weeks or so" or when he goes out.  (AR 28-29).  He also
7   gets anxiety when he is around people. (AR 29). Aside from depression,
8   anxiety and panic attacks, Plaintiff testified that he gets angry a lot.
9   (AR 30).  He believes these symptoms interfere with his ability to focus
10  and concentrate.  (AR 31).

11

12     Two or three weeks prior to the hearing, Plaintiff had a hemorrhage
13  in his left eye which could have been caused by the headaches.  (AR 33).
14  Plaintiff has had high blood pressure since he was 18 years old and is
15  taking medication for it.  (AR 34).  Plaintiff had an increased heart
16  rate problem, but an ablation was performed on his heart to fix the
17  problem.  (AR 23, 35).

18

19     Plaintiff stated that his medication, Risperidone, Clonidine, Paxil
20  and Tegretol, make him "really tired."  (AR 35).  He takes them at 10
21  a.m. which make him sleep for two or three hours.  (Id.).  There have
22  been no other treatments recommended for him.  (AR 36).

23

24  **D.   Plaintiff's Father's Testimony**

25

26     Bill Martin, Plaintiff's father, testified that Plaintiff's longest
27  job he ever held was "not even a week."  (AR 38).  He testified after
28

7

1   Plaintiff had the "real big" seizure a year ago, "everything really
2   started going downhill." (AR 39-40).  Plaintiff had cardiac arrhythmia
3   which was addressed with the ablation. (AR 39).

4

5       He further testified that if Plaintiff does not "take his psych
6   meds he gets very angry." (AR 41).  Plaintiff also gets depressed. (AR
7   42).  He testified that Plaintiff's medication causes him to sleep "for
8   like five or six hours." (AR 42-43).

9

10      Plaintiff does not go out and do any kind of social activities
11  because he is worried about having a seizure. (AR 46).  Plaintiff likes
12  to read, get on the computer and download music. (AR 47).

13

14                                **IV.**

15           **THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

16

17      To qualify for disability benefits, a claimant must demonstrate a
18  medically determinable physical or mental impairment that prevents her
19  from engaging in substantial gainful activity[2] and that is expected to
20  result in death or to last for a continuous period of at least twelve
21  months.  <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir. 1998) (citing
22  42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant
23  incapable of performing the work she previously performed and incapable
24  of performing any other substantial gainful employment that exists in

25

26  _____

27       [2]  Substantial gainful activity means work that involves doing
    significant and productive physical or mental duties and is done for pay
28  or profit.  20 C.F.R. § 416.910.

                                  8

the national economy.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. § 416.920.  The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing h[er] past work? If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

<u>Tackett</u>, 180 F.3d at 1098-99; <u>see also</u> <u>Bustamante v. Massanari</u>, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).

9

1    The claimant has the burden of proof at steps one through four, and
2  the Commissioner has the burden of proof at step five. <u>Bustamante</u>, 262
3  F.3d at 953-54.  If, at step four, the claimant meets her burden of
4  establishing an inability to perform the past work, the Commissioner
5  must show that the claimant can perform some other work that exists in
6  "significant numbers" in the national economy, taking into account the
7  claimant's RFC, age, education and work experience. <u>Tackett</u>, 180 F.3d
8  at 1100; 20 C.F.R. § 416.920(g)(1).  The Commissioner may do so by the
9  testimony of a vocational expert or by reference to the Medical-
10 Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P,
11 Appendix 2 (commonly known as "the Grids"). <u>Osenbrock v. Apfel</u>, 240
12 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional
13 (strength-related) and nonexertional limitations, the Grids are
14 inapplicable and the ALJ must take the testimony of a vocational expert.
15 <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000).

16

17                                **V.**

18                        **THE ALJ'S DECISION**

19

20    The ALJ employed the five-step sequential evaluation process and
21 concluded that Plaintiff was not disabled. (AR 9-16).  At step one,
22 the ALJ determined that Plaintiff had not engaged in substantial gainful
23 activity since December 8, 2008. (AR 11).  At step two, the ALJ found
24 that Plaintiff had severe impairments of post-traumatic stress disorder,
25 seizure disorder, obesity, hypertension, history of marijuana abuse and
26 history of tachycardia. (<u>Id.</u>).

27

28

                                   10

At step three, the ALJ determined that Plaintiff did not have an impairment that meets or equals a listed impairment. (Id.). At step four, the ALJ found that Plaintiff could perform a full range of work at all exertional levels but with the following nonexertional limitations: no work on unprotected heights, no work on dangerous or moving machinery, no climbing of ladders, no extremes of temperature, no public contact, and limited communication with fellow employees. (AR 12).

The ALJ concluded that Plaintiff had no past relevant work and had limited education but was able to communicate in English. (AR 14). The ALJ also noted that transferability of job skills was not an issue because Plaintiff did not have past relevant work. (AR 15). At step five, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform." (Id.). The ALJ relied on a vocational expert's ("VE") testimony. (Id.). The VE testified that Plaintiff could work as a "floor waxer," "packager, hand," or "cleaner, hospital." (Id.). The ALJ determined that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). Accordingly, the ALJ determined that Plaintiff was not disabled. (Id.).

\\
\\
\\
\\

11

# VI.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

\\
\\
\\
\\
\\
\\

12

**VII.**

**DISCUSSION**

**A.    The ALJ Properly Weighed The Evidence, Including The State Agency Physicians' Opinions, Regarding Plaintiff's Alleged Mental Impairments**

Plaintiff contends that the findings of state agency physicians Drs. Davis and Cooper[3] did not constitute substantial evidence. (Memorandum in Support of Plaintiff's Complaint ("Complaint Memo.") at 3-5).  The Court disagrees.

As noted above, the ALJ determined that Plaintiff could perform a full range of work at all exertional levels but with the following nonexertional limitations: no work on unprotected heights, no work on dangerous or moving machinery, no climbing of ladders, no extremes of temperature, no public contact, and limited communication with fellow employees.  (AR 12).  In determining Plaintiff's residual functional capacity ("RFC"), the ALJ noted that he considered third-party statements and testimony, but that "greater weight is accorded the objective medical evidence, [Plaintiff's] longitudinal clinical presentation, and the conclusions of the state agency."  (Id.).

_____

[3]  Plaintiff challenges only the stage agency physicians' opinions who considered Plaintiff's mental impairments. (Complaint Memo. at 3). Plaintiff cites to state agency physician Dr. Cooper's opinion in support of his contention.  (Id.).  However, it appears that Dr. Cooper's opinion relates only to Plaintiff's physical impairments, thus the Court will not address his opinion.  (See AR 200-01).

13

Here, the ALJ accorded great weight to reviewing state agency psychiatrist Dr. Davis in determining Plaintiff's RFC. (AR 13). As noted above, after reviewing Plaintiff's mental health history, Dr. Davis determined that Plaintiff suffered from anxiety. (AR 187). Thus, he found that Plaintiff had moderate limitations in only the area of maintaining social functioning. (AR 191). Specifically, Dr. Davis opined that Plaintiff was able to understand, remember and carry-out simple and more complex work instructions and can sustain his concentration, pace and his persistence with his work tasks for two hour blocks of time with customary breaks over the course of a regular work-day week. (AR 197). Dr. Davis also found that Plaintiff would have difficulty coping with the stress of having to consistently interact with the general public or with co-workers. (Id.).

The ALJ properly adopted Dr. Davis' opinion because it was based on substantial evidence. First, state agency medical consultants are "highly qualified" physicians" who are also "experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(f)(2)(I), 416.927(f)(2). "Findings of fact made by State agency medical and psychological consultants ... regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources." See Social Security Ruling ("SSR") 96-6p,[4] 1996 WL 374180, *1.

---

[4] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

14

1     Next, Dr. Davis' opinion is not contradicted in any significant way
2 by other evidence in the record. <u>See</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035,
3 1041 (9th Cir. 1995) (stating that "the report of a nonexamining,
4 nontreating physician need not be discounted when it is not contradicted
5 by <u>all other evidence</u> in the record.") (emphasis in original)
6 (quotations and citations omitted); <u>see also</u> <u>Tonapetyan v. Halter</u>, 242
7 F.3d 1144, 1149 (9th Cir. 2001) (holding that opinions of nontreating
8 or nonexamining doctors may serve as substantial evidence when
9 consistent with independent clinical findings or other evidence in the
10 record). After the ALJ set out a detailed summary of Plaintiff's mental
11 health history between October 2007 and May 2010, he determined that the
12 "treating source notations indicated a stable condition, well managed
13 with medications, without associated or pathology that would preclude
14 competitive remunerative work." (AR 13). The ALJ further noted that
15 "during the period at issue there were no sustained reports of
16 interpersonal difficulty, cognitive dysfunction, or mood instability
17 that would preclude full-time work activity within the parameters as
18 found herein." (<u>Id.</u>). The ALJ's conclusions are supported by the
19 record. Indeed, most if not all of Plaintiff's treatment notes
20 indicated that he did not report any side effects with his medications.
21 (<u>See</u> AR 256-66, 326-39). Further, there was indication that his
22 medications were effective and helped control his symptoms. (<u>See</u> <u>id.</u>).
23 Neither Plaintiff nor his father discussed whether or not the alleged
24 side effects were truly caused by Plaintiff's medications or by his
25 admitted on-going marijuana use. Because Dr. Davis' findings are
26 consistent with much of the record evidence, it constitutes substantial
27 evidence in support of the ALJ's decision. <u>See</u> <u>Thomas v. Barnhart</u>, 278
28

1    F.3d 947, 957 (9th Cir. 2002).    Moreover, Plaintiff has not
2    challenged these findings by the ALJ with any specificity.   He merely
3    complains that the foundation of Dr. Davis' opinion was based on records
4    prior to the relevant period and did not take into account his and his
5    father's functional report. (Complaint Memo. at 4).   Plaintiff does not
6    identify what, if any additional or different mental functional
7    limitations were assessed in the treating notes or functional reports
8    that Dr. Davis did not purportedly review.   Indeed, the most recent
9    progress reports are not significantly different from the earlier
10   reports, and thus do not indicate a progressive worsening of Plaintiff's
11   mental health.   Plaintiff also has not challenged the ALJ's finding that
12   his medical records showed his mental condition "remained improved and
13   controlled with treatment and medication."   (AR 13); see Stone v.
14   Heckler, 761 F.2d 530, 532 (9th Cir. 1985) (noting the most recent
15   medical report is the most probative).

16
17   **B.   The ALJ Properly Found That Plaintiff Could Perform The Positions**
18         **Identified By The Vocational Expert**

19
20        Plaintiff contends that the ALJ erred in finding that Plaintiff
21   could perform the positions identified by the VE because it was
22   inconsistent with his RFC. (Complaint Memo. at 5-6).   The Court
23   disagrees.

24
25        In order for an ALJ to rely on job descriptions in the DOT that
26   fail to comport with a Plaintiff's limitations, the ALJ must "definitely
27   explain this deviation." Pinto v. Massanari, 249 F.3d 840, 847 (9th
28
                                   16

Cir. 2001).  The ALJ may rely on expert testimony that contradicts the DOT if the record contains persuasive evidence supporting the deviation. Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008); Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).  However, an ALJ may not rely on personal speculation or incomplete VE testimony.  See Tommasetti, 533 F.3d at 1042.

At the hearing, David Rineheart, a vocational expert, was asked to assume a hypothetical individual of Plaintiff's age, education with no prior work experience, no exertional limitations, cannot work at unprotected heights or on dangerous or moving machinery but can climb stairs but no ladders, no exposure to extreme heat, and should work in a nonpublic setting that requires limited communication with fellow employees. (AR 48).  Based on this hypothetical, the VE opined there were jobs available in the regional or national economy as a floor waxer, DOT 381.687-034, medium unskilled; packager hand, DOT 920.587-019, medium unskilled; and cleaner, hospital; DOT 323.687-010, medium unskilled.  (AR 48-49).  The VE further testified that the hypothetical was consistent with the DOT.  (AR 49).

The VE was then asked to assume a hypothetical individual with the same restrictions as the first hypothetical but this person "would be off task at least 20 percent of the time due to psychological based symptoms or fatigue."  (AR 49).  Based on this hypothetical, the VE testified that such a person could not work.  (Id.).

17

1        Plaintiff argues that the hand packager and floor waxer jobs as
2    identified by the VE are inconsistent with his RFC, specifically his
3    preclusion from working around moving machinery. (Complaint Memo. at
4    6). Plaintiff argues that the hand packager job entails working around
5    a conveyer belt and if he "had a seizure and fell over onto a moving
6    conveyor belt, the likelihood of injury would appear to be high."
7    (Id.). Additionally, a floor waxer job requires him to work with an
8    electrical polishing machine and if he had a seizure and "the machine
9    moved without an operator, the likelihood for injury would appear high."
10   (Id.).

11

12       However, Plaintiff's speculation as to potential injury to himself
13   from the use of a conveyor or electrical polishing machine does not
14   constitute evidence of an inconsistency between the VE's testimony and
15   the DOT. Rather, with respect to "moving mechanical parts," both job
16   descriptions state, "Not Present-Activity or condition does not exist."
17   DOT 920.587-018, 381.687-034. Further, although the job description
18   states that a hand packager performs "any combination" of the tasks
19   listed in the DOT, it does not state that a worker is required to
20   perform all of them. DOT 920.587-018. Moreover, a floor waxer is not
21   required to clean, wax and polish floors with a machine but, as noted
22   in the DOT, the job can also be accomplished by hand with a weighted
23   brush. DOT 381.687-034. Thus, contrary to Plaintiff's contention,
24   there were no deviations in the DOT descriptions of a floor waxer and
25   hand packager that failed to comport with his limitations.

26

27

28

1    Next, Plaintiff contends that the hospital cleaner job requires a

2  "worker to replace soiled drapes and cubicle curtains; those tasks would

3  require [him] to stand on a ladder." (Complaint Memo. at 6). Thus, it

4  is inconsistent with his RFC of "no climbing of ladders." (Id.).

5  Again, although the description states that a hospital cleaner's job

6  would include replacing soiled drapes and cubicle curtains, it does not

7  state that a worker would necessarily be required to stand on a ladder

8  to do so.   DOT 323.687-010.

9

10    Even assuming that the ALJ erred in relying on the VE's testimony

11  that Plaintiff could perform the work of a hospital cleaner, any error

12  was harmless, as the VE identified two other jobs that did not conflict

13  with the DOT, and therefore the ALJ did not err in relying on that

14  testimony. Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1162

15  (9th Cir. 2008) (determining that errors that do not impact the validity

16  of the ALJ's ultimate decision are harmless.); see also Stout v. Comm'r

17  of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2005) (holding that

18  an error is harmless if it is "irrelevant to the ALJ's ultimate

19  disability conclusion.").  Accordingly, no remand is required.

20  \\

21  \\

22  \\

23  \\

24  \\

25  \\

26  \\

27

28

VIII.

**CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[5] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner.   IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED:   January 3, 2012

                                                     /S/
                                    SUZANNE H. SEGAL
                                    UNITED STATES MAGISTRATE JUDGE


**THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT INTENDED TO BE INCLUDED IN OR SUBMITTED TO ANY ONLINE SERVICE SUCH AS WESTLAW OR LEXIS.**

---

[5]   This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

20